ENTRY ORDER
2021 VT 19
SUPREME COURT DOCKET NO. 2021-043
MARCH TERM, 2021

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Bennington Unit, |
| | } | Criminal Division |
| | } | |
| Joshua Boyer | } | DOCKET NO. 370-4-18 Bncr |

Trial Judge: Cortland Corsones

In the above-entitled cause, the Clerk will enter:

¶ 1.    Defendant Joshua Boyer is held without bail pending trial, as permitted under 13 V.S.A. § 7553 where a person is charged with an offense punishable by life imprisonment and the evidence of guilt is great.  He appeals from the trial court's recent denial of his request that it reconsider that decision and release him on conditions.  Defendant argues that the court abused its discretion by failing to consider the indefinite suspension of jury trials due to COVID-19 in determining whether continuation of the order was the least-restrictive measure available to ensure his appearance at future court proceedings.  We affirm.

¶ 2.    The relevant procedural history is as follows.  On April 23, 2018, defendant was charged with repeated aggravated assault on a child under 13 V.S.A. § 3253a(a)(8), aggravated assault with a "violent career criminal" enhancement under 13 V.S.A. § 1024(a)(1) and 13 V.S.A. § 11a,[1] and aggravated sexual assault on a child causing serious injury under 13 V.S.A. § 3253a(a)(1).  The alleged victim of all three offenses is defendant's minor daughter, M.B.  Each offense carries a potential sentence of life imprisonment.

¶ 3.    Defendant was held without bail under 13 V.S.A. § 7553 at his arraignment the same day the charges were filed.  He did not request a weight-of-the evidence hearing, but instead

_____

[1]  The enhancement, applicable on conviction of a third "felony crime of violence," made this charge punishable by life imprisonment.  13 V.S.A. § 11a.  However, § 11a was repealed effective June 19, 2019.  2019, No. 77, § 6.  Presumably in response, on October 16, 2019, the aggravated assault charge was amended to first-degree aggravated domestic assault under 13 V.S.A. § 1043(a)(1) with a "habitual criminal" enhancement under 13 V.S.A. § 11.  Section 11 allows a sentence of life imprisonment for persons convicted of a fourth or subsequent felony offense.  13 V.S.A. § 11.

filed a motion seeking home detention.[2]  The trial court denied that request, and we affirmed its ruling on appeal.  See State v. Boyer, 2018 VT 62, 207 Vt. 648, 192 A.3d 1270 (mem.).

¶ 4.      In May 2019, defendant was charged in a separate docket with obstructing justice, 13 V.S.A. § 3015, coupled with a habitual-offender enhancement, 13 V.S.A. § 11.  The charge was based on allegations that while incarcerated, defendant arranged through third parties for a message to be sent to M.B. advising her of how to go about changing her testimony against him in advance of scheduled depositions.

¶ 5.      A jury trial was held in the instant matter in November 2019.  However, the court declared a mistrial due to juror misconduct.  The parties began preparing for a second trial.

¶ 6.      On March 16, 2020, this Court issued Administrative Order 49, which suspended all jury trials light of the COVID-19 pandemic.  A.O. 49, https://www. vermontjudiciary.org/sites/default/files/documents/AO%2049%20-%20Declaration%20of%20 Judicial%20Emergency%20and%20Changes%20to%20Court%20Procedures%20with%20amen dments%20through%2012-22-20.pdf [https://perma.cc/NK4V-H3UG].  As of January 1, 2021, criminal jury trials could be scheduled with the authorization of the Chief Superior Judge and Court Administrator, based on consideration of such factors as the current course of the pandemic, recent recommendations of public-health experts, the rights and interests of the litigants, and "whether the unit has adopted a plan that addresses ventilation and air flow and allows for socially distanced seating and movement of all participants and jurors through the course of a jury draw and trial."  A.O. 49, § 3(b).

¶ 7.      In August 2020, defendant filed a motion to dismiss the prosecution, citing his speedy-trial, due-process, and confrontation rights and arguing that this Courts' order suspending jury trials in light of the COVID-19 pandemic was unconstitutional.  The court denied the motion, concluding that defendant's rights to a speedy trial and due process had not been violated and holding that this Court has constitutional authority to suspend jury trials.  It further found that defendant failed to raise a cognizable claim under the confrontation clause.

¶ 8.      Then, on November 25, 2020, defendant filed this motion requesting that the court review its decision to hold him without bail under 13 V.S.A. § 7553 and release him on conditions to the home of a family friend.  He asked that the court consider, in ruling on his motion, the length of his pre-trial incarceration and ongoing uncertainty about when his jury trial could be held, and noted that he "has made no threats to any individuals or indicated that he would flee."

¶ 9.      A hearing on the motion was held by video on January 7, 2021.  Defendant presented testimony from the family friend with whom he proposed to reside.  The parties agreed that the court could take judicial notice of the court's ruling on defendant's May 2018 request for release on home detention status.  Defendant again requested that the court exercise its discretion under § 7553 to release him pending trial under any conditions of release the court felt would be

---

[2]  Defendant's motion predated a legislative amendment to the home-detention statute, 13 V.S.A. § 7554b, which rendered the program unavailable to those held without bail.  2017, No. 164 (Adj. Sess.), § 7 (effective July 1, 2018).

2

sufficient to protect the public, citing Article 12 of the Vermont Constitution, which holds that the right to trial by jury "ought to be held sacred." See Vt. Const. ch. I, art. 12.

¶ 10. The court denied the motion and continued to hold defendant without bail under 13 V.S.A. § 7553. Defendant appeals from that decision, see Vt. Const. ch. II, § 40; 13 V.S.A. § 7556(e), arguing that the court abused its discretion in failing to consider whether a hold-without-bail order was the least restrictive measure available to assure public safety and defendant's appearance at future proceedings, and in declining to weigh in that calculus the impact of the indefinite suspension of jury trials resulting in defendant's prolonged incarceration.

¶ 11. As explained above, a person charged with an offense punishable by life imprisonment may be held without bail under 13 V.S.A. § 7553 where the evidence of his guilt is great. State v. Hardy, 2008 VT 119, ¶ 10, 184 Vt. 618, 965 A.2d 478 (mem.) (holding measure of great evidence of guilt is "whether substantial, admissible evidence of guilt, taken in the light most favorable to the State, can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty"). For purposes of this motion, defendant does not contest that the evidence of his guilt is great.

¶ 12. But even where the evidence of guilt is great and the presumption in favor of release dissolves, the trial court retains the discretion to allow defendant's release on bail. State v. Pellerin, 2010 VT 26, ¶ 13, 187 Vt. 482, 996 A.2d 204. In this circumstance, defendant bears the burden of persuading the court to set bail or conditions of release. State v. Auclair, 2020 VT 26, ¶ 16, __ Vt. __, 229 A.3d 1019 (mem.). So long as its decision is not arbitrary, the trial court's discretion in this area is broad. State v. Ford, 2015 VT 127, ¶ 10, 200 Vt. 650, 130 A.3d 862 (mem.). Our review is correspondingly narrow and strictly confined to whether an abuse of discretion has occurred. Id. ¶ 8.

¶ 13. In exercising its discretion, the court "may look to the factors listed in 13 V.S.A. § 7554(b)." Auclair, 2020 VT 26, ¶ 3. Those factors are:

> the nature and circumstances of the offense charged; the weight of the evidence against the accused; the accused's employment; financial resources, including the accused's ability to post bail; the accused's character and mental condition; the accused's length of residence in the community; and the accused's records of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

13 V.S.A. § 7554(b). The court may also consider "[r]ecent history of actual violence or threats of violence . . . as bearing on the character and mental condition of the accused" for purposes of determining whether any conditions of release can reasonably ensure protection of the public. 13 V.S.A. § 7554(b)(2).

¶ 14. Here, the trial court considered each of the § 7554(b) factors in turn. First, it noted that defendant "is facing extremely serious charges," observing that all three offenses in the instant case carry a potential sentence of life imprisonment, while two carry a mandatory minimum of

twenty-five years to serve, which cannot be suspended. It also found the nature of the allegations against defendant to be extremely concerning given that they involved physical assault and repeated sexual assault of his fourteen-year-old daughter. Finally, it noted that defendant also faces a felony charge of obstructing justice in the instant case, which due to the habitual-offender enhancement also carries a potential sentence of life imprisonment.

¶ 15. Turning to the other factors, the court observed that defendant faces three charges in this docket, "although there may be some duplication in the charges," and another in the obstruction-of-justice case. It noted that neither party had contested that the evidence of defendant's guilt was great for purposes of the motion. With respect to employment, the court indicated that defendant is currently incarcerated, and were he to be released, "it does not appear as though he would be employed." The court was "not aware of defendant having any ability to post bail." He had resided in the Bennington area for a significant length of time, and has "significant family ties to the area, including his mother," although he proposed to live at a friend's residence in Charlotte.

¶ 16. The court found that the three charges at issue in this case "represent a recent history of violence and threats of violence against the complainant." With respect to risk of flight, the court noted that defendant's record includes a failure to appear in 2003 and a 2004 conviction for resisting arrest. His record also revealed seven other convictions: unlawful trespass and disorderly conduct, also in 2004; aggravated assault, domestic assault, and violation of an abuse-prevention order in 2005; aggravated domestic assault in 2006; and aggravated assault in 2010. He was found to have violated his probation in 2005 and his parole in 2008.

¶ 17. The court then considered defendant's argument that the suspension of jury trials due to COVID-19 should be part of the court's analysis in deciding whether to grant bail. The court concluded that defendant had properly raised the same issue in the due-process component of his motion to dismiss, which the court had denied one-and-a-half months earlier, and found that passage of time should not alter its earlier decision on the merits of the claim.

¶ 18. Defendant now contends that, although the court weighed each of the § 7554(b) factors, it abused its discretion by failing to consider the impact of the COVID-19 pandemic with regard to public safety and risk of flight. Because defendant did not raise this specific argument in his motion for bail review or in the hearing on his motion, he has failed to preserve it for appeal. Progressive Ins. Co. v. Brown ex rel. Brown, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666 ("In order to rely upon an argument on appeal, an appellant must properly preserve it by presenting it to the trial court with specificity and clarity." (quotation omitted)). In the trial court, defendant argued generally that the court should consider the impact of the pandemic on the ability to schedule his second trial and exercise its discretion to release him on that basis, citing his Article 12 right to a jury trial. He did not argue that the pandemic should alter the court's analysis with respect to public safety or risk of flight. Nor is the effect of the pandemic on those concerns so clear as to require the court's sua sponte consideration. Because defendant did not afford the trial court an opportunity to address this argument below, we will not consider it on appeal.

¶ 19. Given the lack of specificity in defendant's argument, the trial court reasonably construed it to raise the same due-process challenge it had disposed of in ruling on defendant's

motion to dismiss, and indicated that its ruling on that point had not changed in the intervening month and a half. The court's ruling on the due-process issue closely tracked our decision in <u>State v. Labrecque</u>, a case in which a defendant held without bail under 13 V.S.A. § 7553 pending trial appealed, arguing that the extended length of his pretrial detention under A.O. 49 violated his constitutional due-process rights. 2020 VT 81, __ Vt. __, __ A.3d __. Because substantive due process prohibits the punishment of pretrial detainees, <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-36 (1979), we explained in <u>State v. Blackmer</u> that to uphold this principle, "(1) bail cannot be denied in order to inflict pretrial punishment; (2) pretrial detention cannot be excessive in relation to the regulatory goal, and (3) the interests served by the detention must be legitimate and compelling."[3] 160 Vt. 451, 459-60, 631 A.2d 1134, 1140 (1993). Thus, a defendant arguing that the length of his pretrial detention fails to satisfy these requirements may test that contention in connection with a challenge to the order holding him without bail. In this case, it was reasonable for the court to consider the broad arguments offered by defendant in connection with his request for release on bail within that same framework. Defendant does not argue that the court's earlier due-process analysis was incorrect, but that the court erred by declining to reconsider his argument in the context of bail review. Because the court applied the analysis from <u>Labrecque</u>, which was a bail-review case, defendant's contention that the court's analysis should be different in this context is unpersuasive.

¶ 20. Here, with the § 7554(b) factors in mind, the court turned to the overarching question of whether any combination of conditions could assure public safety or mitigate the risk of flight to avoid prosecution. Given defendant's "significant history of violence," his prior failures to abide by court orders and conditions of parole, and the fact that he presently faces four charges across two dockets, all of which carry a potential sentence of life imprisonment, the court could not be assured that the friend with whom defendant proposed to reside "could enforce the conditions to protect the public or to prevent flight to avoid prosecution." To the extent defendant also suggests that although the court set forth each of the applicable factors, it did not "consider or weigh" those factors to determine whether a hold-without-bail order was the least restrictive measure required to address risk of flight, we find this argument unavailing. We have long rejected contentions that a trial court must "relate its actions to the ultimate interest[] of risk of flight" and public safety because "[s]uch a command would elevate form over substance and be inconsistent with our limited standard of review." <u>Blackmer</u>, 160 Vt. at 461, 631 A.2d at 1141. Rather, "[o]nce the court determines that defendant cannot be trusted to comply with conditions of release, the effect on risk of flight and other bail interests becomes obvious." <u>Id</u>. at 461-62, 631 A.2d at 1141.

¶ 21. The burden was on defendant "to persuade the court that discretionary release is warranted." <u>Auclair</u>, 2020 VT 26, ¶ 24. However, after considering all of the § 7554(b) factors, the court was unable to find that even the strict conditions of release proposed by defendant could adequately assure public safety or mitigate the risk of flight to avoid prosecution. It revisited

---

[3] <u>Labrecque</u> did not, as defendant argues, "implicitly h[o]ld that the impact of court closures and the suspension of jury trials necessarily factor[s] into a trial court's bail analysis." It merely held that where the argument is presented, the delay of jury trials due to COVID-19 was appropriately considered in connection with the narrow type of due-process challenge which may be levied in a bail request. See <u>Labrecque</u>, 2020 VT 81, ¶ 30.

defendant's due-process argument and determined that its prior order should not be reconsidered. There was no abuse of discretion here.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice